**LaVern DeMARRIAS, Appellant,**

v.

**STATE OF SOUTH DAKOTA, Appellee.**

**No. 17200.**

United States Court of Appeals
Eighth Circuit.

July 22, 1963.

L. R. Gustafson, Britton, S. D., for appellant.

Frank L. Farrar, Atty. Gen., Pierre, S. D., for appellee; Walter Weygint, Asst. Atty. Gen., Pierre, S. D., with him on the brief, together with Harold C. Doyle, U. S. Atty., Sioux Falls, S. D., and Parnell J. Donohue, Asst. U. S. Atty., Sioux Falls, S. D., amicus curiae.

Before VOGEL, VAN OOSTERHOUT and RIDGE, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by LaVern DeMarrias from final order of the district court denying him a writ of habeas corpus. Appellant was prosecuted and convicted in the courts of South Dakota on a charge of burglary committed within that state. His conviction was affirmed. State of South Dakota v. DeMarrias, S.D., 107 N.W.2d 255. Certiorari was denied. 368 U.S. 844, 82 S.Ct. 72, 7 L.Ed.2d 42. The sole issue raised in the state court appeal and here is whether the state court had jurisdiction to try and convict the appellant.

18 U.S.C.A. § 1153 provides that federal courts shall have exclusive jurisdiction over 10 major crimes committed by

Indians in Indian country. Burglary, such as here charged, is included in the 10 major crimes. It is conceded that the appellant is an Indian and is a duly enrolled member of the Sisseton-Wahpeton-Sioux Indian Tribe which is based in the Lake Traverse Reservation in South Dakota. It is also undisputed that the crime was committed upon land which was included in the original Indian reservation created by treaty between the Indians and the Federal Government. The controverted issue is whether, in view of the subsequent developments hereinafter discussed, the place of the crime was within Indian country as such term is used in the federal statutes. 18 U.S.C.A. § 1151 provides:

> "Except as otherwise provided in sections 1154 and 1156 of this title, the term 'Indian country', as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, * * *."

The trial court held that the state court acted within its jurisdiction in trying and convicting the appellant of the burglary offense charged and denied the writ. The court rejected appellant's contention that under the circumstances of this case Indian country includes all lands within the original exterior boundaries of the reservation. The court, in a carefully considered opinion reported in 206 F.Supp. 549, cites and sets out portions of the agreement entered into in 1889 between the Government and the Tribe wherein it was agreed that more land was included in the reservation than needed and that for an agreed consideration the Tribe cede, sell, relinquish, and convey to the United States all right, title and interest in unallotted lands in the original reservation (26 Stat. 1035–1038), and that such agreement was ratified by Congress in 1891 (26 Stat. 1038–39), and that the lands thus acquired from the Indians were made available for settlement under the home-

stead and townsite laws, and by proclamation of the President such ceded lands were open for settlement (27 Stat. 1017). The land upon which the crime occurred was part of the land ceded by the Indians which was open for settlement and as to which patent issued to a Non-Indian. The trial court also points out that the Enabling Act for the creation of the State of South Dakota provides that Indian lands shall remain under the exclusive jurisdiction and control of the United States "until title thereto shall have been extinguished by the United States."

The trial court in its opinion has clearly demonstrated that the effect of the foregoing transactions was to restore the unallotted lands which the Indians ceded to the public domain and to remove such unallotted lands from the category of Indian country.

This same background material is relied upon and discussed in Application of DeMarrias, 77 S.D. 294, 91 N.W.2d 480, and is followed in State of South Dakota v. DeMarrias, S.D., 107 N.W.2d 255. In the second DeMarrias case, the Supreme Court of South Dakota states that the earlier DeMarrias case involved the same reservation, the same treaty, the same defendant and a similar crime, and poses the same question as the latter appeal. The court, in the second DeMarrias case, distinguishes Petition of High Pine, 78 S.D. 121, 99 N.W.2d 38, and Kills Plenty v. United States, 8 Cir., 133 F.2d 292, in which cases federal jurisdiction was held to be exclusive upon the basis that in such cases the land on which the crime was committed remained within the diminished or closed portion of the reservation. The trial court in our present case distinguishes Kills Plenty and Seymour v. Schneckloth, 368 U.S. 351, 82 S.Ct. 424, 7 L.Ed.2d 346, upon the same basis and upon additional grounds.

It is clear from the South Dakota cases cited that the highest court of that state has repeatedly held that South Dakota has jurisdiction in the situation here presented. Such findings are binding upon

us to the extent that South Dakota law governs.

The United States Attorney for South Dakota, pursuant to leave granted, appeared as amicus curiae. He states in his application for leave that such action "is taken with the express approval of the Department of Justice at Washington, D. C." The United States Attorney joins counsel for the State in brief in opposing the petition for the writ. The practical interpretation of the Department of Justice, which is charged with the enforcement of federal prosecutions, is entitled to weight in the interpretation of the somewhat ambiguous laws here under consideration.

We agree with the trial court's conclusion that the scene of the crime was not within Indian country. We affirm upon the basis of the trial court's well-reasoned opinion.[1]

We are indebted to Mr. L. R. Gustafson for his representation of the appellant under court appointment and for the excellent briefs and oral argument made upon behalf of the appellant.

1. A serious question is presented as to whether the judgment entered in this case should be vacated upon the ground of mootness under the teaching of Parker v. Ellis, 362 U.S. 574, 80 S.Ct. 909, 4 L. Ed.2d 963. The original record discloses that after conviction a three-year prison sentence was imposed upon the appellant on March 8, 1960. No allegation is made in the petition as to service of the sentence but the warden's return on show cause order dated May 3, 1962, states that appellant was immediately committed to the institution and is still confined there. Upon such record, it appeared to us that the service of the three-year sentence would have been completed before we heard this case on March 13, 1963. The Clerk, at our direction, for the past two months has sought information from counsel as to the precise record of the service of the sentence. Appellant's counsel advised that appellant is still serving his sentence. Inconsistent reports have been received from the Attorney General of South Dakota, the last of which encloses letter from the warden, reading in part:

"DeMarrias was committed here January 25, 1961 from Roberts County for a term of six months for obtaining money

and property under false pretenses. He was sentenced February 15, 1961 in Marshall County for burglary in the third degree to a term of three years, running concurrently. He is eligible for discharge on these sentences on July 15, 1963. However, he was sentenced May 23, 1963, for a term of ninety days in this institution for escaping from the South Dakota State Penitentiary, said sentence to commence to run at the expiration of the sentence he is now serving. He is eligible for discharge, with good time, September 30, 1963 on the ninety day sentence."

The trial court did not have before it the issue of when the sentence would expire and we are not in a favorable position to resolve such disputed fact issue. Upon the basis of the information available, uncertainty exists with respect to the date of completion of sentence by reason of the conflicting statements as to time of commencement of service of sentence, lack of information as to the length of absence, if any, resulting from the escape and insufficient basis for determination of any good-time credit.

We have chosen with some reluctance to dispose of this appeal upon the merits in order to avoid further delay.