The CROW TRIBE OF INDIANS, Plaintiff and Respondent,
v. DONALD DEERNOSE and AGNES DEERNOSE, Husband and Wife, Defendants and Appellants.

No. 11999.
Submitted June 10, 1971.
Decided August 10, 1971.
487 P.2d 1133.

MR. JUSTICE CASTLES dissented and filed opinion.

Douglas Freeman, argued, Hardin, Redle, Yonkee & Arney, Sheridan, Wyoming, for defendants and appellants. Rex O. Arney argued, Sheridan, Wyoming.

Stanton, Hovland & Torske, Hardin, for plaintiff and respondent. James Torske argued, Hardin, Montana.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

The district court of Big Horn County entered a real estate mortgage foreclosure decree on Indian trust lands on the Crow Reservation in favor of the Crow Tribe as mortgagee and against Donald Deernose and his wife, as mortgagors. From an order denying their motion to vacate this judgment, the mortgagors appeal.

The sole issue upon appeal is whether the state district court possesses jurisdiction of the foreclosure action. We hold it does not, and accordingly set aside the foreclosure decree and dismiss the action.

The facts are uncontested. Donald Deernose and his wife, who are both members of the Crow Indian Tribe and live on the Crow Reservation situated in Big Horn County, Montana, executed and delivered three promissory notes between 1963 and 1965 in favor of the Crow Tribe of Indians. Payment of these notes was secured by a real estate mortgage on lands situate on the Crow Reservation held in trust by the United States for Deernose and his wife. This real estate mortgage was approved by the Assistant Area Director of the Bureau of Indian Affairs pursuant to the Act of March 29, 1956, 70 Stat. 62; 25 U.S.C.A. § 483a.

When the promissory notes were not paid on their due date,

the mortgagee instituted an action to foreclose the real estate mortgage in the state district court of Big Horn County, the situs of the mortgaged land.

Deernose and his wife, the defendants and mortgagors, were personally served in the foreclosure action. Their answer, among other things, alleged that the state district court lacked jurisdiction over the subject matter of the suit.

The district court entered a judgment of default and a foreclosure decree. Thereafter, defendants and mortgagors moved to vacate the judgment on the basis the court lacked jurisdiction over the subject matter of the suit. On September 8, 1970 the district court entered an order denying the motion to vacate the judgment, from which defendants and mortgagors now appeal. We note that the parties have treated this as an appeal from a final judgment and we shall do likewise.

Appellant mortgagors Deernose contend the federal courts have exclusive jurisdiction of foreclosure suits involving allotted Indian lands held in trust by the United States for individual Indian owners. They point out that neither Montana nor the Crow Tribe has complied with specific statutory procedures enacted by Congress, whereby state court jurisdiction over such suits may be acquired. Absent specific Congressional authorization coupled with strict compliance with its terms, state courts acquire no jurisdiction, they assert.

Respondent mortgagee, on the other hand, argues that Congress in enacting 70 Stat. 62, 25 U.S.C.A. § 483a, relating to mortgages on allotted Indian trust lands with approval of the Secretary of the Interior, intended to terminate the trust status and emancipate such lands, thereby subjecting them to mortgage foreclosure actions in state courts.

A brief history of the Crow Indian Reservation and the allotment of lands therein to individual Indians will set the stage for determination of the jurisdictional issue.

The Crow Indian Reservation was created and defined by a series of treaties, agreements and acts of Congress.

The general allotment of 1887 provided that allotments were to be made under regulations of the Secretary of the Interior and he was to issue a trust patent on all allotted lands providing for the United States to hold the land in trust for the sole use and benefit of the allottee.

In 1934 the trust status of the allotted lands was "extended and continued until otherwise directed by Congress." 25 U.S.C.A. § 462; Putnam v. United States, (CCA8) 248 F.2d. 292.

Unless jurisdiction has been granted state courts by Act of Congress, the federal courts have exclusive jurisdiction over foreclosure actions involving Indian trust lands. The supremacy and exclusive character of federal law in Indian affairs is summarized in the following quotation from Federal Indian Law, compiled by the United States Department of the Interior, Office of the Solicitor, and published by the Government Printing Office, 1958 Revision, p. 3:

"The fact that Indian tribes are largely exempt from the operations of local laws derives from the fact that the Constitution of the United States vests in the National Government rather than in the States the three powers upon which the law pertaining to Indian affairs is primarily based—the warmaking power, the treatymaking power, and the power to regulate commerce with Indian tribes. These, in our history, have furnished the basis for valid interposition of Federal law to the exclusion of State control of Indian affairs."

The federal government's exclusive jurisdiction over Indian lands was recognized as early as 1864 in the Organic Act for the Territory of Montana, 13 Stat. 85. The Enabling Act of 1889, 25 Stat. 676, Sec. 4, enunciated the principle of exclusive jurisdiction by Congress over Indian lands. Section 2 of Ordinance No. 1, Montana Constitution, contains the same provision.

Thus Montana courts do not have jurisdiction over the subject matter of the foreclosure suit unless Congress has granted such jurisdiction.

In 1953 Congress provided a way by which states could

acquire both civil and criminal jurisdiction over Indian affairs. Sec. 7 of the Act of August 15, 1953, 67 Stat. 588, 590, provides in pertinent part:

"The consent of the United States is hereby given to any other State not having *jurisdiction* with respect to criminal offenses or civil causes of action, or with respect to both, as provided for in this Act, to assume *jurisdiction* at such time and in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State to assumption thereof." (Emphasis added)

Montana never passed the necessary legislation accepting civil jurisdiction over Indians on the Crow Reservation, and, accordingly, never became invested with such jurisdiction. Such proposed legislation was introduced in the 1957 Session of the Montana Legislature as House Bill 397, but failed to pass.

In 1968 Congress repealed this 1953 legislation (67 Stat. 588) and enacted the Civil Rights Act of 1968 (82 Stat. 79, 25 U.S.C.A. § 1322(a) (b), continuing federal consent to state jurisdiction with the added requirement of tribal consent:

"(a)  The consent of the United States is hereby given to any State not having *jurisdiction* over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country situated within such State to assume, with the consent of the tribe occupying the particular Indian country or part thereof which would be affected by such assumption, such measure of jurisdiction over any or all such civil causes of action arising within such Indian country or any part thereof as may be determined by such State to the same extent that such State has *jurisdiction* over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country or part thereof as they have elsewhere within that State.

"(b) Nothing in this section shall authorize the alienation,. encumbrance, or taxation of any real or personal property,. including water rights, belonging to any Indian or any Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute, or with any regulation made pursuant thereto; or shall confer *jurisdiction* upon the State to adjudicate, in probate proceedings or otherwise, the owner-ship or right to possession of such property or any interest therein." (Emphasis added)

No tribal consent has been granted under the 1968 Civil Rights Act. Accordingly, jurisdiction has not been conferred on the state courts of Montana under the Act. Nor did Mon-tana acquire jurisdiction over foreclosure suits on Indian trust lands by virtue of the provisions of 70 Stat. 62, 25 U.S.C.A. § 483a, enacted by Congress in 1956 and providing as follows:

"The individual Indian owners of any land which either is held by the United States in trust for them or is subject to a restriction against alienation imposed by the United States are authorized, subject to approval by the Secretary of the Interior, to execute a mortgage or deed of trust to such land. Such land shall be subject to foreclosure or sale pursuant to the terms of such mortgage or deed of trust in accordance with the laws of the State or Territory in which the land is located.. For the purpose of any foreclosure or sale proceeding the Indian owners shall be regarded as vested with an unrestricted fee simple title to the land, the United States shall not be a necessary party to the proceeding, and any conveyance of the land pursuant to the proceeding shall divest the United States of title to the land. All mortgages and deeds of trust to such land heretofore approved by the Secretary of the Interior are ratified and confirmed."

This statute by its language simply authorizes individual

Indians to mortgage lands held in trust by the United States for their use and benefits, with the consent of the Secretary ·of the Interior, and permits such mortgages to be foreclosed in accordance with state law. It has nothing to do with granting jurisdiction to state courts in such mortgage foreclosure .actions, and pointedly avoids the use of the term "jurisdiction".

It is abundantly clear that state court jurisdiction in Indian affairs on reservations does not exist in the absence of an ·express statutory grant of such jurisdiction by Congress together with strict compliance with the provisions of such ·statutory grant. Illustrative of this principle is the 1971 case Kennerly v. District Court, etc., of Montana, 400 U.S. 423, ·91 S.Ct. 480, 27 L.Ed.2d 507.

Where as here, Congress has not expressly granted juris ·diction to state courts except under procedures specified in the ·Civil Rights Act of 1968 or its forerunner, Sec. 7 of the Act of August 15, 1953, 67 Stat. 588, and where the procedures ïn neither enactment have been complied with, state court jurisdiction over real estate mortgage foreclosure actions on Indian trust lands situate on Indian Reservations does not ·exist.

The foreclosure decree of the district court is set aside and the cause dismissed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON and DALY, concur.

MR. JUSTICE CASTLES, (dissenting) :

I dissent. I would find that the action of Congress in 1956 in granting rights to Indian owners to alienate their lands by mortgage with approval of the Secretary of the Interior was sufficient to allow either the Indian owners or the mortgagees access to the state courts. Our action here in the majority opinion would seem to go so far as to deny access to

32

our state courts and allow only use of Federal Courts. If this rationale is carried out to its fullest extent, our Indian citizens are being denied their rights under state law.